AMERICAN GENERAL LIFE INSURANCE COMPANY          PLAINTIFF


v.                                    CIVIL ACTION NO. 1:12-cv-00087-GHD-DAS


EMMA M. HANNAH; HEATHER NAKOLE HANNAH;
LETOYA JA'KIA HANNAH; JAMEELA VERNAY HANNAH;
and JASMINE KIARRA HANNAH, by and through her mother
and general guardian, Janice H. Hannah          DEFENDANTS


## MEMORANDUM OPINION DENYING MOTION FOR JUDGMENT ON THE PLEADINGS AND MOTION FOR SUMMARY JUDGMENT

The case *sub judice* is an interpleader action filed by Plaintiff American General Life Insurance Company ("Plaintiff"), pursuant to Rule 22 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1335, to determine the rights of the defendants to life insurance policy proceeds. The interpleaded fund amounts to $250,000 plus interest. Presently before the Court are two motions: a motion for summary judgment [16] filed by Defendants Heather Nakole Hannah, LeToya Ja'Kia Hannah, Jameela Vernay Hannah, and Jasmine Kiarra Hannah, by and through her mother and general guardian, Janice H. Hannah (collectively, the "Other Defendants"), as well as a motion for judgment on the pleadings [23] filed by Defendant Emma M. Hannah ("Hannah"). Upon due consideration, the Court finds that both motions should be denied.

### A. Factual and Procedural Background

Apparently, at the time of his death, Winfred Lee Hannah (the "Decedent") had two life insurance policies. One life insurance policy was issued by Primerica Life Insurance Company in the amount of $55,000, by the terms of which the Decedent's wife, Hannah, was designated

primary beneficiary and no contingent beneficiaries were named. *See* Winston Cnty. Ch. Ct. Final J. [16-17] at 2 ¶ 6. The second life insurance policy was issued by the Old Line Life Insurance Company of America, of which Plaintiff is the successor in interest, in the amount of $250,000, by the terms of which Hannah was designated primary beneficiary and "All Children of [the Decedent]" were listed as contingent beneficiaries. *See* Pl.'s Compl. [1] ¶¶ I, VIII; Old Line Life Ins. Policy No. MM0010249 [1] at 13; Policy Appl. [1] at 30.

The second life insurance policy is the subject of the present action. The subject policy was issued on September 3, 1999. *See* Old Line Life Ins. Policy No. MM0010249 [1] at 13. On June 27, 2001, the Decedent died from thermal burn injuries sustained when boiling water was poured on him. Pl.'s Compl. [1] ¶ IX; Hannah's Answer [8] ¶ IX; Decedent's Death Certificate [1] at 32. On March 27, 2002, the grand jury of the Circuit Court of Winston County indicted Hannah for the felony crime of murder. The indictment charged that Hannah

> did wilfully, unlawfully, feloniously[,] and without authority of law kill and murder [the Decedent], a human being, while engaged in the commission of the felony crime of aggravated assault upon [the Decedent], without any design to effect the death of [the Decedent], by burning and scalding [the Decedent] by pouring hot water on him, against the peace and dignity of the State of Mississippi.

Winston Cnty. Cir. Ct. Indictment [16-3] at 1. On December 11, 2002, Hannah's murder trial commenced. Before any witnesses were called, Hannah expressed her desire to enter a plea of guilty to the lesser included offense of manslaughter. Subsequently, the district attorney stated the factual basis of the charge:

> [T]he State would prove at trial that [Hannah] . . . did willfully, unlawfully, feloniously[,] and without authority of law, kill and murder [the Decedent] in a manner that could have been considered murder or possibly manslaughter. We would prove at trial in this case that she did, in fact, throw a boiler of boiling water

> on [the Decedent], which, in fact, resulted in his death
> approximately 21 days later.

Hannah's Plea Colloquy Tr. [16-15] at 8–9. This exchange followed:

> THE COURT: You've heard what the State would intend to prove
> if this case went on to trial. In other words, if we went ahead and
> had the trial today, that is what—his intentions would be to prove
> that. Do you understand that?
>
> [HANNAH]: Yes.
>
> THE COURT: You've heard what he said. Did you do those
> things?
>
> [HANNAH]: I—no, I didn't. But yeah, I heard what he said.
>
> THE COURT: You didn't do it.
>
> [HANNAH]: No. I can't prove that I didn't do it.
>
> THE COURT: I can't take your plea.

*Id.* at 9. Accordingly, Hannah's trial resumed. After the first witness testified, Hannah withdrew her previous plea of not guilty and entered a plea of guilty to the lesser included offense of manslaughter. *See id.* at 10. The court stated that Hannah understood she would be accepting the same factual basis for her plea that she had previously rejected, and Hannah agreed. *Id.* at 10–11. The court accepted her plea to the lesser included charge, convicted her of manslaughter,[1] and sentenced her to 20 years in the custody of the Mississippi Department of Corrections. Winston Cnty. Cir. Ct. Judgment [16-4] at 1.

Subsequently, Hannah challenged her manslaughter conviction. First, on December 11, 2002, she filed a motion for post-conviction relief in the Circuit Court of Winston County which the circuit court denied. *See Hannah v. State*, 943 So. 2d 51, 52 (Miss. Ct. App. 2006) [16-12] at 1. Second, Hannah appealed that denial to the Mississippi Court of Appeals. *See id.* The court

---

[1] The Judgment [16-4] does not reference any particular Mississippi manslaughter statute.

of appeals affirmed the decision of the circuit court, finding no merit to Hannah's arguments. *See id.* Upon review, the Mississippi Supreme Court reversed the judgments of the court of appeals and the circuit court and remanded Hannah's case to the circuit court for an evidentiary hearing on Hannah's claims as to assistance of counsel and the voluntariness of her guilty plea. *See* Miss. Sup. Ct. On Mot. for Reh'g [16-13] at 11. On remand, the circuit court held an evidentiary hearing, during which Hannah withdrew her motion for post-conviction relief. *See* Winston Cnty. Cir. Ct. Order Dismissing Mot. for Post-Conviction Relief [16-5] at 3. Then, in 2009, Emma filed a second petition for post-conviction relief in the circuit court, alleging newly discovered evidence on the involuntariness of the withdrawal of her first petition for post-conviction relief. *See Hannah v. State*, 49 S. 3d 654, 655 (Miss. Ct. App. 2010) [16-6] at 1. The circuit court denied the motion as non-meritorious, and the Mississippi Court of Appeals affirmed that decision. *See id.* Finally, on November 13, 2007, Hannah filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in federal district court. On June 12, 2009, Judge Michael P. Mills adopted the Magistrate Judge's report and recommendation denying Hannah's motion for post-conviction relief for failure to exhaust state remedies and further finding that Hannah "willingly, deliberately, knowingly[,] and with the advice of counsel terminated the state post-conviction action and agreed to accept her sentence." *See* Report & Recommendation [16-9] at 5; Final Judgment Adopting Report & Recommendation [16-10] at 1. Hannah did not appeal this ruling to the Fifth Circuit Court of Appeals. She has exhausted all avenues of post-conviction relief and has now finished serving her sentence.

Approximately one month before Judge Mills entered his ruling on Hannah's § 2254 petition, Defendants Heather Nakole Hannah and LeToya Ja'Kia Hannah, two of the Decedent's children who were appointed and acting as co-administratrixes of the Decedent's estate, filed a

4

complaint in the Chancery Court of Winston County to determine the Decedent's heirs at law. *See* Winston Cnty. Ch. Ct. J. Adjudicating Heirs at Law [1] at 8. The chancery court ruled that the Decedent, who died intestate, had five heirs at law: his widow Hannah and his children, who are the Other Defendants in this case. *See id.* at 9.

As stated above, the Decedent had two life insurance policies. Only the Primerica policy came to light during the proceedings to probate the Decedent's estate, and in fact, the chancery court ruled that the Decedent's entire probate estate consisted of the Primerica policy. *See* Winston Cnty. Ch. Ct. Final J. [16-17] at 2 ¶ 6, 4 ¶ 11. In that proceeding, the Other Defendants challenged Hannah's claim to the Primerica policy proceeds based on Mississippi Code § 91-1-25 (the "Slayer Statute"), *id.* at 3 ¶ 8; the chancery court determined that the proceeds were not payable to Hannah, despite her being named the primary and sole beneficiary to the Primerica policy proceeds, *see id.* at 3 ¶¶ 8–9; the chancery court paid the Primerica policy proceeds to the Decedent's estate, *id.* at 3 ¶ 9; and based on the chancery court's approval of the parties' compromise settlement of all Hannah's claims against the estate, Hannah received one payment of $7,500 from the Primerica policy proceeds "in full satisfaction of the claims of [Hannah] against the [Decedent's Estate] and the [Primerica policy]," *id.* at 4–5 ¶ 14, 6 ¶ 4.

Apparently unbeknownst to the Other Defendants, the Decedent also had the subject policy with Old Line Life Insurance Company of America. On November 29, 2011, after her release from prison, Hannah submitted a proof of death claim form to Plaintiff, requesting a lump sum settlement check for the subject policy. *See* Proof of Death [1] at 35. On April 23, 2012, Plaintiff filed an interpleader complaint, wherein it alleged that Hannah and the Other Defendants had competing claims to the subject policy proceeds and it was unable to determine the respective rights of the defendants to the subject proceeds. *See* Pl.'s Compl. [1] ¶ XI.

Hannah and the Other Defendants filed separate answers to the complaint. Plaintiff subsequently deposited the subject proceeds into the Court registry and, upon the parties' agreement, was dismissed from the case. *See* Agreed J. of Dismissal with Prejudice [47]. On October 17, 2012, the Other Defendants filed a motion for summary judgment [16]. On November 5, 2012, Hannah filed a motion for judgment on the pleadings [23].[2] With this factual and procedural background in mind, the Court now turns to the merits of first the motion for judgment on the pleadings and then the motion for summary judgment.

## B. Analysis and Discussion

### 1. Hannah's Motion for Judgment on the Pleadings

A party may move for judgment on the pleadings "[a]fter the pleadings are closed—but not early enough to delay trial." FED. R. CIV. P. 12(c). The Court's task on a motion for judgment on the pleadings is the same as in a Rule 12(b)(6) motion: to determine upon a review of the pleadings and judicially noticed facts whether the plaintiff has stated a valid claim for relief. *Brown v. CitiMortgage, Inc.*, 472 F. App'x 302, 303 (5th Cir. 2012) (per curiam) (citing *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 440 n.8 (5th Cir. 2000)). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)); *see Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312–13 (5th Cir. 2002). "[P]leadings . . . simply may be a general summary of

---

[2] Hannah also filed a motion for jury trial [30] which this Court granted as unopposed. *See* Ct.'s Order Granting Hannah's Mot. Jury Trial [30]. Further, the Other Defendants filed a motion to stay discovery [15], and Hannah filed a motion to deny or defer consideration [24] of the Other Defendants' motion for summary judgment. The Court entered an Order [45] and memorandum opinion [46] staying discovery pending the resolution of the motion for summary judgment and the motion for judgment on the pleadings. In that Order and opinion, the Court also denied Hannah's motion to deny or defer consideration of the motion for summary judgment.

the party's position that is sufficient to advise the other party of the event being sued upon, to provide some guidance in a subsequent proceeding as to what was decided for purposes of res judicata and collateral estoppel, and to indicate whether the case should be tried to the court or to a jury. No more is demanded of the pleadings than this; indeed, history shows that no more can be performed successfully by the pleadings." *Twombly*, 550 U.S. at 585 n.7, 127 S. Ct. 1955 (quoting 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1202 (3d ed. 2004) (quotation marks omitted)). "Pleadings should be construed liberally, and judgment on the pleadings is appropriate only if there are no disputed issues of fact and only questions of law remain." *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001) (citing *Voest-Alpine Trading USA Corp. v. Bank of China*, 142 F.3d 887, 891 (5th Cir. 1998)).

In this case, the pleadings incorporate by physical attachment and reference, *inter alia*, the Chancery Court of Winston County's judgment adjudicating the Decedent's heirs at law, *see* [1] at 8–10, as well as the petition to discharge co-administratrixes, disburse estate funds, and close estate filed in that court, *see* [8-1] at 1–13.[3] Finally, Hannah's Rule 12(c) motion attaches the chancery court's final judgment in the probate proceedings, *see* [23-1] at 1–8, which is also explicitly referenced in Hannah's answer, *see* Hannah's Answer [8] at 2–3 ¶ VII. Hannah asks this Court to consider the chancery court's final judgment in the probate proceeding, as well as the pleadings in this case, in deciding her Rule 12(c) motion.

"A motion brought pursuant to [Rule] 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the

---

[3] The pleadings also incorporate by physical attachment and reference the following: the subject life insurance policy, *see* [1] at 11–29; the Decedent's application for the subject policy, *see* [1] at 30–31; the Decedent's death certificate, *see* [1] at 32; the Circuit Court of Winston County's judgment against Hannah for manslaughter, *see* [1] at 33; the Mississippi Court of Appeals' notice to the Clerk of the Circuit Court of Winston County of affirmance of denial of Hannah's motion for post-conviction relief, *see* [1] at 34; and Hannah's proof of death claimant statement submitted with reference to the subject policy, *see* [1] at 35.

substance of the pleadings and any judicially noticed facts." *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (per curiam) (citing 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1367 (1990)). In considering a Rule 12(c) motion, the Court may consider matters not strictly contained within the pleadings, but attached to the pleadings, because "[those] documents thereby [become] part of [the] pleadings." *See Voest-Alpine Trading USA Corp.*, 142 F.3d at 891 n.4. Moreover, this is true even if the documents were not attached to any of the pleadings, provided that the pleadings refer to and rely on them. *See Great Plains Trust Co.*, 313 F.3d at 313. Rule 201(b) of the Federal Rules of Evidence provides: "[A] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." This includes taking notice of court records and documents, both within and without the federal judicial system, "to establish the fact of such litigation and related filings" if those proceedings have a direct relation to the matters at issue. *See Taylor v. Charter Med. Corp.*, 162 F.3d 827, 830–31 (5th Cir. 1998) (citations omitted); 1 JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S FEDERAL EVIDENCE § 201.12[3] (2d ed. 2014). *See also Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007); *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172–1173 (10th Cir. 1979); *Chamberlain v. 625 New Orleans, LP*, No. 1:11–CV–140, 2011 WL 1627080, at *2 n.1 (E.D. Tex. Apr. 18, 2011); *O'Neal v. Roadway Exp., Inc.*, No. 06-0883, 2006 WL 2037380, at *4 (E.D. La. July 17, 2006); *United States v. S. Cal. Edison Co.*, 300 F. Supp. 2d 964, 973 (E.D. Cal. 2004).

Based on the foregoing, the Court will take judicial notice of the probate proceedings in the Chancery Court of Winston County. However, the Court is not necessarily bound to accept

another court's factual findings as true, because those factual findings do not constitute facts "not subject to reasonable dispute" within the meaning of Rule 201 of the Federal Rules of Evidence. *See Taylor*, 162 F.3d at 829–30. But this Court can judicially notice a particular fact that was found by the chancery court if that fact is indisputable, such as if the chancery court did not make a certain finding. *See United States v. Wood*, 925 1580, 1581–1582 (7th Cir. 1991). Finally, this Court may find that particular facts found in the probate proceeding are binding on the parties in this action through a preclusion doctrine, such as collateral estoppel.

Hannah's Rule 12(c) motion asks this Court to find that the Other Defendants are barred from now challenging Hanna's right to recover the subject proceeds, because the Other Defendants raised and waived that argument in the probate proceeding when they succumbed to a compromise settlement concerning the Primerica life insurance policy; thus, Hannah maintains that the Other Defendants are now collaterally estopped from raising the same argument in this case. Hannah's Rule 12(c) motion further argues that the compromise settlement between these parties in the probate proceeding demonstrates the Other Defendants' agreement that Hannah did not willfully kill the Decedent in violation of the Slayer Statute, and thus, that the Other Defendants cannot now assume a different position in this case—apparently, a judicial estoppel argument.

The Other Defendants argue that they are not collaterally estopped from arguing that Hannah is barred from recovery under the Slayer Statute, because the chancery court neither decided nor resolved that issue with respect to this interpleader. The Other Defendants alternatively argue that even if collateral estoppel applies in this case, Hannah is barred from recovery because she perpetrated fraud upon the probate court by failing to disclose the existence

9

of the subject policy so that it could be made part of the Decedent's estate.[4]  The Other

Defendants further argue that the probate settlement shows only that the Other Defendants

agreed to let Hannah have less than an equal share of the Primerica policy proceeds through

settlement, not that they agreed that Hannah did not willfully kill the Decedent in violation of the

Slayer Statute.

The Court will examine first the collateral estoppel issue and then the judicial estoppel

issue.

### a.  Collateral Estoppel

To determine whether the pleadings and judicially noticed facts show that the Other

Defendants are collaterally estopped from claiming Hannah is barred from recovery by the

Slayer Statute, the Court must examine the underpinnings of the doctrine of collateral estoppel,

which is a form of issue preclusion and falls within the greater principle of res judicata.  *See*

*Taylor v. Sturgell*, 553 U.S. 880, 892 n.5, 128 S. Ct. 2161, 171 L. Ed. 2d 155 (2008).[5, 6]

Res judicata encompasses claim preclusion[7] and issue preclusion and is designed to

ensure that later courts "honor the first actual decision of a matter that has been actually

---

[4] Because this Court finds that collateral estoppel does not apply in this instance, the Court need not and does not reach the fraud issue.

[5] Throughout this opinion, this Court will refer to the traditional, specific term "collateral estoppel" rather than the modern catch-all term "issue preclusion." *See Kircher v. Putnam Funds Trust*, 547 U.S. 633, 647 n.14, 126 S. Ct. 2145, 165 L. Ed. 2d 92 (2006) ("Modern usage calls for the descriptive term, 'issue preclusion,' in place of 'collateral estoppel.'  But we are backsliders out of pity for the tired reader; 'preclusion' by statutory fiat is enough preclusion for one opinion.").

[6] The Court notes that collateral estoppel is an affirmative defense which generally must be pled in the answer.  FED. R. CIV. P. 8(c)(1); *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 350, 91 S. Ct. 1434, 28 L. Ed. 2d 788 (1971).  The parties apparently agree that Hannah pled collateral estoppel in her answer.  *See* Hannah's Answer [8] at 2 ("Some or all of Plaintiff's claims are barred in whole or in part by . . . collateral estoppel . . . .").

[7] "Claim preclusion, or [true] res judicata, bars the litigation of claims that either have been litigated or should have been raised in an earlier suit."  *Webb v. Town of St. Joseph, La.*, — F. App'x —, —, 2014 WL 1273878, at *3 (5th Cir. Mar. 31, 2014) (per curiam) (citing *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005)).

litigated." *Id.* at 892 & n.5, 128 S. Ct. 2161; 18 CHARLES ALAN WRIGHT ET AL., FEDERAL

PRACTICE & PROCEDURE § 4416 (2d ed. 2013).

> The general principle announced in numerous cases is that a right, question, or fact distinctly put in issue and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and, even if the second suit is for a different cause of action, the right, question, or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified. This general rule is demanded by the very object for which civil courts have been established, which is to secure the peace and repose of society by the settlement of matters capable of judicial determination. Its enforcement is essential to the maintenance of social order; for the aid of judicial tribunals would not be invoked for the vindication of rights of person and property if, as between parties and their privies, conclusiveness did not attend the judgments of such tribunals in respect of all matters properly put in issue, and actually determined by them.

*So. Pac. R.R. v. United States*, 168 U.S. 1, 48–49, 18 S. Ct. 18, 27, 42 L. Ed. 355 (1897).

Collateral estoppel is a specific form of issue preclusion that involves a new claim or cause of

action than that in the first action.[8] "[C]ollateral estoppel . . . prevents the same parties or their

privies from relitigating issues that were litigated and decided in a prior action." *Bradberry v.

Jefferson County, Tex.*, 732 F.3d 540, 548 (5th Cir. 2013); *see Ashe v. Swenson*, 397 U.S. 436,

443, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970). "Generally, the issue of whether to apply

collateral estoppel is a question of law." *Bradberry*, 732 F.3d at 549 (citing *United States v.

Brackett*, 113 F.3d 1396, 1398 (5th Cir. 1997)).

In ruling on the Rule 12(c) motion, the Court must determine the effect of the Chancery

Court of Winston County's rulings in the probate proceeding on the interpleader action in this

Court. The Full Faith and Credit Act provides that "judicial proceedings of any court of any . . .

---

[8] The other issue preclusion doctrine, direct estoppel, involves "an issue actually litigated and determined in an action between the same parties based upon the same cause of action." *Napper v. Anderson, Henley, Shields, Bradford & Pritchard*, 500 F.2d 634, 636 n.4 (5th Cir. 1974).

State . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." 28 U.S.C. § 1738. "Federal courts may not employ their own rules . . . in determining the effect of state judgments, but must accept the rules chosen by the State from which the judgment is taken." *Hunter v. Transamerica Life Ins. Co.*, 498 F. App'x 430, 435–36 (5th Cir. 2012) (quoting *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 373, 116 S. Ct. 873, 134 L. Ed. 2d 6 (1996) (in turn quoting *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 481–82, 102 S. Ct. 1883, 72 L. Ed. 2d 262 (1982) (internal quotation marks omitted))). In this case, the rulings in question were made by a Mississippi state court sitting in probate. Therefore, Mississippi's law concerning collateral estoppel governs this dispute.

Under Mississippi law, collateral estoppel precludes re-litigation of a specific issue that was (1) actually litigated in the former action; (2) determined by the former action; and (3) essential to the judgment in the former action. *Am. Cas. Co. v. U.S. Bank*, 950 F.2d 250, 253 (5th Cir. 1992) (citing *Dunaway v. W.H. Hopper & Assocs., Inc.* 422 So. 2d 749, 751 (Miss. 1982)).[9] In addition, the parties in the original action must generally be the same parties as in the subsequent action. *Johnson v. Bagby*, 171 So. 2d 327, 330 (Miss. 1965). The Mississippi Supreme Court repeatedly has stressed that

---

[9] The Court notes that an additional step is considered in cases involving offensive use of collateral estoppel. *See Bradberry v. Jefferson County, Tex.*, 732 F.3d 540, 548 (5th Cir. 2013). In offensive collateral estoppel, "the plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party." *Id.* at 548–49 (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.4, 99 S. Ct. 645, 58 L. Ed. 2d 552 (1979) (quotation marks omitted)). In those cases, the Court additionally examines whether "there are any special [equitable] circumstances that make it unfair to apply the doctrine." *See id.* at 548. The case *sub judice* does not involve offensive collateral estoppel. And the Fifth Circuit has explained that when a case involves mutual estoppel, i.e., when both parties were litigants in the prior action, "an inquiry into special circumstances is unnecessary." *See id.* at 549 (quoting *Swate v. Hartwell*, 99 F.3d 1282, 1290 (5th Cir. 1996) (quotation marks omitted)). Thus, in the instant case, this Court need not examine whether equitable factors counsel that collateral estoppel should not apply.

> in the absence of passing technical muster of the previous action involving identical parties, identical legal issues, and the same facts required to reach a judgment, [collateral estoppel] cannot be applied. And, even where it arguably meets a technical muster, the rule is neither mandatory nor mechanically applied.

*See Baker & McKenzie, LLP v. Evans*, 123 So. 3d 387, 402 (¶ 50) (Miss. 2013) (quoting *Marcum v. Miss. Valley Gas Co.* 672 So. 2d 730, 733 (Miss. 1996) (in turn quoting *Jordan v. McKenna*, 573 So. 2d 1371, 1375 (Miss. 1990) (internal quotation marks omitted))).

The parties apparently agree that they were the same parties in the earlier probate proceeding, and that both this action and the earlier probate proceeding involve the issue of whether Hannah is barred from recovery because she willfully caused the Decedent's death in violation of the Slayer Statute—albeit in the probate proceeding the issue was not raised with respect to the subject policy but rather to the Primerica policy. However, the parties dispute whether this issue was (1) actually litigated in the probate proceeding; (2) determined by the probate proceeding; and (3) essential to the judgment in the probate proceeding.

The Court finds that it is apparent from the pleadings and judicially noticed facts that the issue of whether Hannah willfully caused or procured the Decedent's death in violation of the Slayer Statute and is barred from recovery of the Decedent's life insurance proceeds was not actually litigated and determined in the probate proceeding, nor was it essential to the chancery court's judgment. For all the following reasons, although the Other Defendants raised the Slayer Statute issue in the probate proceeding, Hannah and the Other Defendants reached a settlement prior to the chancery court's issuance of its final judgment, and consequently, the chancery court did not adjudicate the Slayer Statute issue.

First, it is clear to this Court that the Slayer Statute issue was not actually litigated and decided in the probate proceeding. "[C]ollateral estoppel, unlike the broader question of res

13

judicata, applies only to questions <u>actually litigated</u> in a prior suit, and not to questions which <u>might have been litigated</u>." *Channel v. Loyacono*, 954 So. 2d 415, 424 (¶ 31) (Miss. 2007) (citation omitted) (emphases added). *See Brown v. Felsen*, 442 U.S. 127, 139 n.10, 99 S. Ct. 2205, 60 L. Ed. 2d 767 (1979) ("Whereas res judicata forecloses all that which might have been litigated previously, collateral estoppel treats as final only those questions actually and necessarily decided in a prior suit."); *Kariuki v. Tarango*, 709 F.3d 495, 506 (5th Cir. 2013) (for collateral estoppel to apply "[t]he issue must have been fully and vigorously litigated in the prior action") (citation and quotation marks omitted). Although the chancery court <u>could have</u> decided the Slayer Statute issue in the probate proceeding, the chancery court <u>did not</u> decide that issue, and instead entered its final judgment discharging co-administratrixes, authorizing disbursement of estate funds, and closing the Decedent's estate—and mentioning the Slayer Statute issue only peripherally. The final judgment provides that: "[T]he Court finds that [Hannah] has filed pleadings in this cause denying that she is disqualified or barred from inheriting through [the Decedent]. The Court is advised that all parties have reached a compromise settlement of the all [sic] claims of [Hannah] against the [Decedent's Estate] and the claims of [Hannah] to the proceeds of the [Primerica policy]." *See* Winston Cnty. Ch. Ct. Final J. [23-1] at 3 ¶ 8 (emphasis added).[10] Further, nothing before the Court suggests that the settlement reached in the probate proceeding itself forecloses the litigation of the Slayer Statute issue in this action. "[S]ettlements ordinarily occasion no <u>issue preclusion</u> . . . unless it is clear . . . that the parties intend their agreement to have such an effect." *Arizona v. California*, 530 U.S. 392, 414, 120 S. Ct. 2304,

---

[10] Interestingly, the chancery court determined that although Hannah was listed as the sole beneficiary on the Primerica policy, the Primerica policy proceeds should be paid to the Decedent's estate, not to Hannah. *See* Winston Cnty. Ch. Ct. Final J. [23-1] at 3 ¶ 9. Of further interest is that the Primerica policy was adjudicated the sole property in the Decedent's probate estate. *See id.* at 4 ¶ 11. The subject policy was not adjudicated part of the Decedent's estate—had it been, Hannah could not have asserted her claim in <u>this</u> action as to the subject policy proceeds due to the statute of limitations. *See id.* at 4 ¶ 13 ("No other claims have been filed against the estate. The statutory time limit . . . has expired, and all other claims are now barred by the statute of limitations.").

147 L. Ed. 2d 374 (2000); *see United States v. Int'l Bldg. Co.*, 345 U.S. 502, 503–06, 73 S. Ct. 807, 97 L. Ed. 1182 (1953) (Tax Court decision, entered pursuant to the parties' stipulations, did not have issue preclusive effect). "In most circumstances, it is recognized that consent agreements ordinarily are intended to preclude any further litigation on the claim presented but are not intended to preclude further litigation on any of the issues presented. Thus consent judgments ordinarily support claim preclusion but not issue preclusion." 18A WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 4443. "A judgment entered with the consent of the parties may involve a determination of questions of fact and law by the court. But unless a showing is made that that was the case, the judgment has no greater dignity, so far as collateral estoppel is concerned, than any judgment entered only as a compromise of the parties." *United States v. Int'l Bldg. Co.*, 345 U.S. at 505–06, 73 S. Ct. 807 (citations omitted); *see Arizona v. California*, 530 U.S. at 414, 120 S. Ct. 2304 (distinguishing the general nature of settlements from litigation where an issue is actually decided and the determination was essential to the court's judgment). The final judgment in the earlier probate proceeding does not suggest in any way that the parties intended their settlement in the probate proceeding to have collateral estoppel effect over the Slayer Statute issue. As stated above, even in light of the settlement reached between the parties in the probate proceeding, the chancery court indicates that "[t]he parties have advised the Court and the Court so finds that the claim of [Hannah] is doubtful and disputed and could lead to protracted litigation in this matter." Winston Cnty. Ch. Ct. Final J. [16-17] at 4 ¶ 14. For all these reasons, this Court finds that the Slayer Statute issue was not actually litigated and decided in the probate proceeding.

Finally, the Slayer Statute issue was not necessary to the chancery court's judgment in the probate proceeding. "A determination ranks as necessary or essential only when the final

outcome hinges on it." *Bobby v. Bies*, 556 U.S. 825, 835, 129 S. Ct. 2145, 173 L. Ed. 2d 1173; *see* 18 WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 4421. Although the parties' settlement may have facilitated the dismissal of the probate case, a decision on the Slayer Statute issue was not necessary to the chancery court's decision. The language in the chancery court's final judgment was that the chancery court had been "advised of" the parties' settlement with respect to Hannah's claims to the property of the estate. Far from being necessary to the final judgment, the issue was rendered not necessary to the final judgment precisely because the parties reached settlement as to Hannah's claims on the Decedent's estate and thus abandoned any attempt to pursue litigation on those claims. The parties' settlement foreclosed a decision by the chancery court on the Slayer Statute issue.

For all the foregoing reasons, this Court finds that the Slayer Statute issue was not litigated, decided, or necessary to the chancery court's final judgment in the probate proceeding. Accordingly, collateral estoppel does not apply in this instance, and the Other Defendants may litigate the issue of whether Hannah violated the Slayer Statute and is barred from recovering the subject proceeds. Thus, Hannah's motion for judgment on the pleadings [23] shall be denied on this ground.

### b. *Judicial Estoppel*

Hannah further asks this Court to determine from the pleadings and judicially noticed facts that the Other Defendants are judicially estopped from assuming the position in this litigation that Hannah willfully caused the Decedent's death because this position is contrary to their earlier position in the probate proceeding that Hannah did not willfully cause the Decedent's death.

"[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Davis v. Wakelee*, 156 U.S. 680, 689, 15 S. Ct. 555, 39 L. Ed. 578 (1895). This rule, known as judicial estoppel, "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8, 120 S. Ct. 2143, 147 L. Ed. 2d 164 (2000); *see* 18 JAMES WM. MOORE ET. AL., MOORE'S FEDERAL PRACTICE § 134.30 (3d ed. 2000) ("The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding"); 18 WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 4477 ("absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory"). The purpose of judicial estoppel is to "prohibit[ ] parties from deliberately changing positions according to the exigencies of the moment." *United States v. McCaskey*, 9 F.3d 368, 378 (5th Cir. 1993). The United States Supreme Court has set forth some factors to consider in a determination of whether judicial estoppel applies:

> First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. Absent success in a prior proceeding, a party's later inconsistent position introduces no "risk of inconsistent court determinations," *United States v. C.I.T. Constr. Inc.*, 944 F.2d 253, 259 (5th Cir. 1991), and thus poses little threat to judicial integrity. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair

> advantage or impose an unfair detriment on the opposing party if
> not estopped.

*New Hampshire v. Maine*, 532 U.S. 742, 750–51, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001) (some internal quotation marks and citations omitted).

In examining these factors, the Court finds that, first, the Other Defendants' position in the case *sub judice* is not "clearly inconsistent" with their position in the earlier probate proceeding. In this case, the Other Defendants maintain that Hannah pled guilty to willfully causing or procuring the Decedent's death. In the probate proceeding, the Other Defendants had "alleged [Hannah] [was] disqualified from receiving any of the [Primerica policy proceeds] or any other property from the [the Decedent's estate] under the [Slayer Statute]." *See* Winston Cnty. Ch. Ct. Final J. [16-17] at 3 ¶ 8. Even in light of the settlement reached between the parties concerning the Primerica policy, the chancery court indicated the Other Defendants' position was such that "[t]he parties have advised the Court and the Court so finds that the claim of [Hannah] is doubtful and disputed and could lead to protracted litigation in this matter" before stating again that "[t]he parties have reached a compromise settlement of all claims of [Hannah] against the Estate of [the Decedent] and [Hannah's] claims to the [Primerica policy proceeds]." *See id.* at 4 ¶ 14. Neither the pleadings nor the other judicially noticed facts indicate that the Other Defendants have now taken a contrary position to their position in the earlier litigation. Hence, there is no reason to engage in analysis of the further direct estoppel factors. Direct estoppel does not apply in this instance. Therefore, Hannah's motion for judgment on the pleadings [23] shall be denied on this ground, as well.

For all the foregoing reasons, and because the pleadings and other judicially noticed facts do not indicate that the Other Defendants cannot prove entitlement to the interpleader fund,

Hannah's motion for judgment on the pleadings [23] must be denied. The Court now turns to the Other Defendants' motion for summary judgment.

## 2. *Other Defendants' Motion for Summary Judgment*

The Other Defendants move for summary judgment on the grounds that no genuine dispute of material fact exists, contending that Hannah has lost her right to inherit the subject policy proceeds by her guilty plea and subsequent conviction for manslaughter of the Decedent.

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). *See* FED. R. CIV. P. 56(a); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322, 106 S. Ct. 2548.

The party moving for summary judgment bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine dispute of material fact. *See id.* at 323, 106 S. Ct. 2548. Under Rule 56(a), the burden then shifts to the nonmovant to "go beyond the pleadings and by . . . affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S. Ct. 2548 (internal quotation marks omitted). *Accord Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001); *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995).

Where the parties dispute the facts, the Court must view the facts and draw reasonable inferences in the light most favorable to the nonmovant. *See Scott v. Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (internal citations omitted). "However, a nonmovant may not overcome the summary judgment standard with conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *McClure v. Boles*, 490 F. App'x 666, 667 (5th Cir. 2012) (per curiam) (citing *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007)).

The Other Defendants maintain that Hannah lost her right to inherit the subject policy proceeds when she pled guilty to the manslaughter of the Decedent, because the plea was a conviction under Mississippi law and is conclusive as to the facts upon which it is based. Thus, the Other Defendants contend that the manslaughter conviction is conclusive that Hannah admitted to willfully causing the death of the Decedent in violation of the Slayer Statute. The Other Defendants specifically plead and raise the defenses of collateral estoppel, res judicata, judicial estoppel, and fraud. The Other Defendants further argue that even if the subject policy is not found to be part of the Decedent's estate, the same result is attained as a matter of public policy and cases interpreting Mississippi law, given that Mississippi has a strong public policy against allowing someone to procure the death of another and then profit from that illegal act. *See Gholson v. Smith*, 48 So. 2d 603, 605 (Miss. 1950). The Other Defendants maintain that because Hannah pled guilty to willfully causing the death of the Decedent she may not profit from her illegal act and share in the subject policy proceeds.

Hannah asserts that, notwithstanding her conviction upon a guilty plea to the crime of manslaughter, she did not willfully cause or procure the Decedent's death in violation of the Slayer Statute, and that her guilty plea and conviction for manslaughter did not address the issue

of willfulness. Thus, Hannah maintains that the preclusive doctrines do not apply in this instance and that genuine disputes of material fact exist that preclude summary judgment in this case.

Under Mississippi law, the beneficiary of an insurance policy who willfully causes or procures the death of the insured is precluded from recovering the insured's policy proceeds. *Franklin Life Ins. Co. v. Strickland*, 376 F. Supp. 280, 282 (N.D. Miss. 1974). The Slayer Statute provides that any person who "wil[l]fully cause[s] or procures the death of another in any way . . . shall not inherit the property, real or personal, of such other; but the same shall descend as if the person so causing or procuring the death had predeceased the person whose death he perpetrated." MISS. CODE ANN. § 91-1-25. "The factual circumstances under which the insured's homicide is committed by the beneficiary controls the right of recovery." *Strickland*, 376 F. Supp. at 282.

"A conviction in a criminal case may be used for [preclusive effect] in subsequent civil actions, but this rule is not mandatory or mechanically applied." *Johnson v. Cumberland*, 91 So. 3d 646, 651 (¶ 17) (Miss. Ct. App. 2012) (citing *Jordan v. McKenna*, 573 So. 2d 1371, 1375 (Miss. 1990)). In this case, the Court finds that although Hannah's manslaughter conviction "in [the] prior criminal case is conclusive, in [this] subsequent civil action, of the facts upon which the conviction was based," *see Jordan*, 573 So. 2d at 1376, it is unclear from the record before the Court the facts upon which the conviction was based. The opposing claimants seek to recover in their respective favors by presenting evidentiary materials which raise a factual dispute as to whether Hannah's plea of guilty and subsequent conviction of manslaughter indicate that she willfully caused the Decedent's death.

"Although a plea of guilty in a criminal proceeding and conviction thereon are clearly admissible in evidence, they are ordinarily not conclusive on the pleader and may be explained

or rebutted in a subsequent civil case." *Strickland*, 376 F. Supp. at 283 (citing 31A C.J.S. EVIDENCE § 381). *See Hood v. Vandevender*, 661 So. 2d 198, 201 (Miss. 1995) ("There are several manslaughter statutes in this state, some of which do not require willfulness.") (citing MISS. CODE §§ 97-3-27 through 97-3-47)); *Henry v. Toney*, 50 So. 2d 921, 923 (Miss. 1951) ("[A] plea of guilty to manslaughter does not necessarily admit a willful killing. For that reason, it is obvious that such plea cannot be conclusive evidence of guilt of such a killing. On the contrary, it can amount to only slight evidence, or evidence merely that the killing has occurred.").

Hannah's plea of guilty and judgment of conviction, although admissible as a declaration or admission against interest, do not conclusively establish in this civil action that the killing of the Decedent was willful, and Hannah may, if she can, explain or rebut her plea of guilty and show the real circumstances of the manslaughter. *See Strickland*, 376 F. Supp. at 283. The trier of fact must determine the weight and effect to be accorded to her guilty plea and conviction in the light of a full record made at trial, and accordingly, whether Hannah is entitled to recover the interpleader fund as the primary beneficiary on the subject policy. *See id.*

For the foregoing reasons, genuine disputes of material fact exist which preclude summary judgment. Thus, the Court must deny the Other Defendants' motion for summary judgment [16].

## C. Conclusion

In sum, the motion for summary judgment [16] filed by Defendants Heather Nakole Hannah, LeToya Ja'Kia Hannah, Jameela Vernay Hannah, and Jasmine Kiarra Hannah, by and through her mother and general guardian, Janice H. Hannah is DENIED; the motion for

judgment on the pleadings [23] filed by Defendant Emma M. Hannah ("Hannah") is DENIED;

and the STAY IS LIFTED. This case shall proceed to trial.

A separate order shall be issued in accordance with this opinion this day.

THIS, the _11_ day of April, 2014.

_____
SENIOR JUDGE